UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSE MCLEROY,

    Plaintiff,

v.                                                    CASE NO. 8:14-cv-2455-T-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Supplemental Security Income ("SSI"). Plaintiff alleges she became disabled on April 1, 2007. (Tr. 117.) A video hearing was held before the assigned Administrative Law Judge ("ALJ") on January 24, 2013, at which Plaintiff was represented by an attorney. (Tr. 40-71.) The ALJ found Plaintiff not disabled since October 26, 2010, the date of her application. (Tr. 23-32.)

In reaching the decision, the ALJ found that Plaintiff had the following severe impairments: arthritis, anxiety, chronic back pain, and fractured right arm. (Tr. 25.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 27.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 19, 20.)

Plaintiff is appealing the Commissioner's decision that she was not disabled since October 26, 2010. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

I.    Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, * 3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curium); *see also*

*Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

## II.     Discussion

Plaintiff argues that the ALJ did not properly evaluate Dr. Daniel McIntire's opinions because the ALJ's reasons for giving these opinions little weight are not supported by substantial evidence.  Plaintiff also argues that the ALJ did not properly evaluate her knee impairment.

The ALJ found that Plaintiff had the RFC to perform light work except:

> [S]he requires an alternating at-will sit/stand option and she cannot climb stairs.  She can only perform occasional fingering and handling with her right (dominant) hand.  She can only perform simple routine tasks with no production rate or pace work.  Due to pain, she will be off task between 5%-10% of the workday.

(Tr. 27.)

In making this finding, the ALJ gave "little weight" to Dr. McIntire's opinions. (Tr. 30.)  The ALJ explained:

> Dr. [McIntire's] treatment notes indicate only mild symptoms and he consistently recommended the same treatment for two years.  This indicates that the claimant's symptoms are milder than he attested to.  (Exhibits 8F, 28F).  His examination before his opinion only noted the claimant as limited, but did not note her for pain.  (Exhibit 28F, p. 38).  Also, the claimant's consultative examination is inconsistent with Dr. [McIntire's] opinion.  (Exhibit 11F).

(*Id.*)  The consultative examination that the ALJ was referring to was performed by Dr. Kutner, whose opinion the ALJ gave "great weight" because "it is supported by his personal extensive examination of the claimant."  (*Id.*)

The ALJ's consideration of Dr. McIntire's opinions is supported by good

4

cause and substantial evidence. Dr. McIntire was Plaintiff's pain management doctor since March 2010. (*See* Tr. 347.) On December 9, 2011, Dr. McIntire completed a Treating/Examining Source Statement of Physical Capability, opining, *inter alia*, that Plaintiff could stand/walk for one hour at a time and for a total of two hours in an eight-hour workday; she could sit for one hour at a time and for a total of three hours in an eight-hour workday; she could never climb, balance, stoop, crouch, kneel, or crawl; she needed to elevate her feet when sitting, change position frequently, and alternate between sitting and standing; her pain would keep her from being able to sustain employment for eight hours a day, five days a week; and her allegations of pain were supported by the bone density exam and status post breast adenocarcinoma. (Tr. 472-74.)

First, Dr. McIntire's opinion that Plaintiff would be unable to sustain employment for eight hours a day, five days a week, was not entitled to any special significance because whether Plaintiff is unable to work is an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d). "[E]ven when offered by a treating source, [such statements] can never be entitled to controlling weight or given special significance." SSR 96-5p. Therefore, the ALJ properly rejected this opinion.

Moreover, the ALJ properly evaluated Dr. McIntire's remaining opinions, some of which the ALJ explicitly adopted in the RFC assessment. For example, to the extent the ALJ determined that Plaintiff required an alternating at-will

sit/stand option, she could not climb stairs, and she would be off task for 5%-10% of the workday due to her pain, the RFC seems consistent with Dr. McIntire's opinions in the Treating/Examining Source Statement of Physical Capability.  (Tr. 27.)

To the extent Dr. McIntire opined that Plaintiff was more limited than determined by the ALJ, the ALJ provided specific reasons supported by substantial evidence for giving Dr. McIntire's opinions little weight.  For example, prior to completing the Treating/Examining Source Statement of Physical Capability, Dr. McIntire's examinations consistently showed that Plaintiff's range of motion of the cervical and lumbar spine was limited, not painful, and he recommended essentially the same type of conservative treatment even when Plaintiff requested an increase of her medications and/or when her symptoms worsened.  (Tr. 337-44, 346, 416-20, 422-25, 427, 1040-41.)  Thus, the ALJ properly inferred that Plaintiff's symptoms were milder than Dr. McIntire suggested.  Although Plaintiff's pain level at the initial visit was an eight and a half on a scale of zero to ten, she was not taking medications at the time.[2]  (Tr. 347.)

Further, the ALJ properly observed that Dr. Kutner's examination was

---

[2] Although at times Plaintiff's pain level was a seven or an eight, at that time Plaintiff's range of motion was noted as limited, not painful, and her gait was normal. (Tr. 1036-39, 1041.)  Also, when Dr. McIntire noted that Plaintiff's pain was a nine, Plaintiff had a temporary splint on her broken right arm, and her gait was still normal and her cervical and lumbar range of motion was limited.  (Tr. 1035; *but see* Tr. 1033-34 (painful cervical range of motion).)

inconsistent with Dr. McIntire's opinions. Dr. Kutner's March 11, 2011 examination showed no abnormalities as to Plaintiff's extremities or musculoskeletal system. (Tr. 451.) Dr. Kutner noted that the X-rays of Plaintiff's lumbar spine and left hip were normal. (*Id.*) Dr. Kutner opined: "This claimant's physical examination reveals a rather thin, frail looking woman, but otherwise I did not see any other physical problems. . . . Her functional assessment is such that she probably would have difficulty doing physically strenuous type work." (Tr. 452.) Although Dr. Kutner was a one-time examiner, the ALJ did not err in relying on his examination when weighing Dr. McIntire's opinions. The ALJ provided specific reasons supported by substantial evidence to give little weight to Dr. McIntire's opinions, and Dr. Kutner's examination was only one of those reasons. Moreover, the ALJ's RFC assessment was more restrictive than Dr. Kutner's functional assessment. In sum, the ALJ provided good cause for giving little weight to Dr. McIntire's opinions to the extent those opinions were more restrictive than the RFC assessment.

Plaintiff's second argument is that the ALJ did not properly evaluate her knee impairment. With respect to Plaintiff's knee impairment, the ALJ stated:

> At [the] hearing, Ms. McLeroy testified she cannot work because she has no car to drive and she has difficulties walking to the bus stop. She stated her walking difficulties stem from knee and hip pain. . . . In 2009, Ms. McLeroy developed occasional hip and knee pain. (Exhibit 2F, p. 21). She was diagnosed with osteoarthritis in her left knee. (Exhibit 2F, p. 22). At her most recent examination, her doctor noted some swelling and effusion in her knee. (Exhibit 23F,

> pp. 8, 11). A 2012 X-ray noted her for moderate arthropathy. (Exhibit 23F, p. 35). . . .
> Based on her arthritis, pain, examinations and arm fracture, I find the claimant limited to the light exertional level. . . . Her ability to shop in Walmart alone indicates greater walking capabilities. She also reported that she sweeps, does grocery shopping and does laundry. (Hearing testimony, Exhibits 4E, 8E).
> Consultative examiner, Dr. Morris Kutner, M.D., found no signs of arthritis in her extremities. . . .
> With regard to her knee pain, in 2009 he [referring to Dr. Bret Henricks] only recommended she change her diet and exercise and felt she only needed to follow up with him in 2 years. (Exhibit 2F, p. 25). Also, in 2012, when she complained of continuing knee pain, her doctor noted she was doing a lot of moving the weekend before she complained about pain. (Exhibit 23F, p. 9). This indicates that her knee only mildly affects her and that she is capable of more exertion than testified to. She also stated she has no difficulties with her bathroom hygiene. (Exhibit 4E). Based on her mild back and knee issues, I find no limitation with her bending. . . . Also, the claimant recently submitted that she takes no medication except for Ibuprofen. (Exhibit 17E). . . . In addition, her records note that she had no pain symptoms except for her arm pain. (Exhibit 24F, p. 37.)
> . . .
> Therefore, based on her conservative treatment, her daily activities[,] her examination notes and Dr. Kutner's opinion, I find the claimant does not have further limitations.

(Tr. 28-29.)

The ALJ properly considered Plaintiff's knee impairment. The record indicates that Plaintiff complained of left knee pain in October 2009. (Tr. 281.) Her knee was "mildly swollen with effusion on the medial aspect and in the popliteal fossa." (Tr. 282.) She was diagnosed with left knee pain and left knee osteoarthritis, among others, and was given a prescription for Tramadol. (*Id.*) As reflected in Dr. McIntire's records, Plaintiff complained of knee pain on March 5,

8

2010, March 31, 2010, April 28, 2010, May 26, 2010, August 9, 2011, September 8, 2011, October 14, 2011, November 11, 2011, December 9, 2011, January 9, 2012, February 9, 2012, March 19, 2012, April 20, 2012, and May 18, 2012.  (Tr. 344-47, 1033-43.)

On March 11, 2011, Dr. Kutner's examination revealed no evidence of any arthritis, inflammation, or tenderness, and normal range of motion in the knees, spine, hips, and ankles, among others.  (Tr. 451.)  On October 10, 2011, Plaintiff complained of pain in her left knee and ankle with swelling.  (Tr. 691.)  The X-ray from that day showed: "1. Mild degenerative joint disease medial compartment and patellofemoral compartment.  2. Joint effusion in the left knee."  (Tr. 687.)

On March 22, 2012, when Plaintiff presented to Watson Clinic with a broken arm, she had "no other areas of pain."  (Tr. 489.)  Earlier that month, Plaintiff reported that she was not taking any medication, other than Valium.  (Tr. 651.)  On October 16, 2012, Plaintiff was seen at the Emergency Department at Lakeland Regional Medical Center for left knee pain and swelling lasting for three days.  (Tr. 581.)  She reported she "was doing a lot of moving over the weekend but [did] not recall any specific trauma."  (*Id.*)  She also reported having "similar symptoms in the past which eventually resolved spontaneously."  (*Id.*)  Plaintiff's pain was a three.  (Tr. 596.)  On examination, Plaintiff had "prepatellar swelling and a palpable effusion," "some mild erythema of the skin," but "no significant warmth," and a "good range of motion of flexion extension."  (Tr. 583.)  The X-ray

of the knee was interpreted as showing mild degenerative changes. (*Id.*) The X-ray report provided: "There is moderate arthropathy involving predominately the medial joint compartment. Since the previous examination on 10/10/2011, there has been interval progression of the arthropathy. No fracture or other acute abnormalities appreciated." (Tr. 607.)

On October 30, 2012, Plaintiff complained of knee pain, relieved by medication. (Tr. 852, 945.) On examination, there was minimal swelling and tenderness in her left knee. (Tr. 947-48.) Plaintiff was advised "to elevate and rest [her] knee when swelling occurs" and "use Tylenol of Ibuprofen for pain or fever." (Tr. 948.) On November 10, 2012, she had a normal musculoskeletal exam and reported no pain. (Tr. 909, 937.) On November 25, 2012, Plaintiff complained of left knee pain, but she had normal gait and negative musculoskeletal examination. (Tr. 951, 953.)

At the hearing, Plaintiff testified that she helped with household chores, such as loading the dishwasher, preparing meals, and sweeping the floor, and took care of dogs and chickens. (Tr. 48, 59.) She stated she could not work because she had no vehicle and walking to the bus stop was very difficult given her knee and hip pain. (Tr. 48.) Plaintiff testified her knee would swell for three to five days anywhere from one to three times a month. (Tr. 50-51.) In a Function Report, Plaintiff indicated that she went to church, Walmart, and doctors' offices on a regular basis, drove to the store, did laundry, and walked

around the yard. (Tr. 156, 168-69.)

The ALJ considered the record evidence and limited Plaintiff to a reduced range of light work. The ALJ acknowledged Plaintiff's complaints of knee pain and swelling and her diagnosis of osteorthritis, but given her daily activities, Dr. Kutner's examination findings, her conservative treatment, and her reports of no pain symptoms and no medications at times, the ALJ concluded that further limitations were not warranted. This conclusion is supported by substantial evidence. Although the ALJ was apparently confused as to Dr. Henricks's report, which pertained to Plaintiff's osteopenia, rather than osteoarthritis, this was only one, among several, reasons that the ALJ considered with respect to Plaintiff's knee impairment.[3] To the extent Plaintiff is asking the Court to re-weigh the evidence, the Court cannot do so. The question on appeal is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Based on the foregoing, the Court finds that the ALJ's consideration of Plaintiff's knee impairment is supported by substantial evidence.

---

[3] In December 2008, Plaintiff was diagnosed with osteopenia. (Tr. 285.) Dr. Bret Henricks, who read the results of the bone density X-ray of the lumbar spine and left hip, noted: "Treatment recommendations include risk factor modification, healthy diet, moderate exercise, calcium supplements and multi-vitamins including vitamin D. Medical therapy with hormone replacement should be considered." (*Id.*) On July 20, 2011, Plaintiff underwent a whole body bone scan, the results of which were normal. (Tr. 1031.)

11

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on February 24, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record